**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**WAFA AL-HADWAN**,                                     Case No. 2:24-CV-13405

                Plaintiff,                          Hon.  Jonathan J.C. Grey
                                     Mag. Judge Anthony P. Patti

      v.

**HAMTRAMCK PUBLIC SCHOOL DISTRICT**,
A Municipal Corporation, and **NABIL NAGI**, in
his individual and official capacity,

                Defendants.

_____

| | |
|---|---|
| **ELDER BRINKMAN LAW, PLLC** | **CLARK HILL PLC** |
| **AZZAM E. ELDER (P53661)** | **ANNE-MARIE V. WELCH (P70035)** |
| Attorney for Plaintiff | Attorney for Defendant HPS |
| 1360 Porter Street, Suite 200 | 220 Park St., Ste 200 |
| Dearborn, MI  48124 | Birmingham, MI  48009 |
| aelder@elderbrinkman.com | awelch@clarkhill.com |
| Tel: (313) 946-2000 | Tel.: (248) 988-1810 |

**AHMAD A. CHEHAB (P75560)**
**MILLER, CANFIELD, PADDOCK**
**AND STONE, P.L.C.**
Co-Counsel for Defendant Hamtramck
Public Schools
150 W. Jefferson Ave. Ste. 2500
Detroit, MI  48226
(313) 963-6420
Chehab@millercanfield.com

**RJ LANDAU PARTNERS, PLLC**
**RICHARD J. LANDAU (P42223)**
Attorney for Defendant Nabil Nagi
5340 Plymouth Road, Suite 200
Ann Arbor MI  48105
Rjlandau@rjlps.com
Tel.: (734) 369-5850

_____

## DEFENDANT HAMTRAMCK PUBLIC SCHOOL DISTRICT'S
## MOTION TO DISMISS

Defendant, Hamtramck Public School District, through its attorneys, Clark Hill PLC, moves this Court to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For these reasons, and the reasons set forth more fully in the attached Brief in Support, Plaintiff's First Amended Complaint must be dismissed.

1.   Plaintiff's retaliatory harassment claim under the Elliott-Larsen Civil Rights Act ("ELCRA") must be dismissed because retaliatory harassment does not exist independent of Title VII as a matter of law.

2.   Plaintiff's ELCRA retaliation claim fails where she cannot show significant factor causation because she did not engage in protected activity before Nagi initiated an investigation into her relationship with Elhady, where Plaintiff admits Nagi's actions were the result of a fight with Elhady and to coerce and intimidate the Board President, her cousin, and where her non-renewal came more than a year after she engaged in any protected activity.

3.   Plaintiff's investigation and leave are not adverse actions to support her ELCRA retaliation claim or her ELCRA discrimination claim as a matter of law.

L3414\460328\280138335

4.   Plaintiff cannot establish her ELCRA claims where she cannot show HPS' legitimate non-discriminatory and non-retaliatory reasons for her non-renewal were pretext for intentional discrimination or retaliation.

5.   Plaintiff cannot state a claim for ELCRA discrimination where she does not allege she was qualified to be the HR Specialist, and does not identify or allege that any non-male employees, non-Yemeni employees, or non-Muslim employees were treated better than her. She also cannot establish discriminatory animus where Nagi both approved her promotion and initiated the investigation into her misconduct.

6.   Plaintiff cannot establish her ELCRA discrimination claim where she has not alleged any conduct or speech related to her national origin, religion or sex.  A rumor that plaintiff may have been engaged in an extra marital affair is not sex-based harassment.

7.   Plaintiff cannot establish her ELCRA discrimination claim because she did not put HPS on notice of her concerns to establish respondeat superior liability.

8.   Plaintiff cannot bring actionable claim under the Whistleblower Protection Act ("WPA") because it does not apply to contract employees seeking nonrenewal of their employment contract as a matter of law.

9.   Plaintiff has not stated a claim under the WPA because her conclusory allegations or insufficient to state a claim and because she cannot establish

causation where Nagi initiated his investigation before she allegedly engaged in protected activity.

10. Plaintiff's slander and false light (Count IV), public policy (Count V), intentional infliction of emotional distress (Count VII), and tortious interference claims (Counts IX & X), all sound in tort. HPS is immune from liability for all these claims, and Plaintiff has not plead her case in avoidance of immunity with respect to HPS.

11. Plaintiff's attempt to plead in avoidance of governmental immunity with respect to Nagi destroys any vicarious liability argument she had against HPS. Plaintiff alleges that Nagi was acting outside the scope of his role and authority when he retaliated against anyone who filed a complaint against him, silenced his victims, collected video surveillance of Plaintiff and tried to use it to coerce and intimidate Plaintiff by making false accusations to shame her in the Yemeni community, and created a false and baseless investigation of Plaintiff.  Accordingly, even if was not protected by governmental immunity (which it is), Plaintiff cannot establish the vicarious liability required to make a claim against HPS for the aforementioned torts as a matter of law.

12.  Plaintiff has not stated a claim for slander and false light where her Complaint fails to contain any factual allegations that HPS broadcasted highly

objectionable information about Plaintiff to the "public in general" that it knew was false. Plaintiff's claim also fails where she does not identify with any specificity any comments allegedly made about her.

13. Plaintiff's IIED claim fails where she does not allege any wrongdoing egregious enough to meet the extreme and outrageous requirement necessary to state her claim.

14. Plaintiff's contract claim is plead in name only and should be barred by governmental immunity.

15. Plaintiff's breach of contract claim fails for lack of specificity and because there was no breach.

16. Plaintiff cannot state a claim of tortious interference against HPS as a matter of law because it cannot interfere with its own contract and because she cannot have a legitimate expectation of continued business relationship given her one-year contract term.

17. Plaintiff's implied contract claim fails where she expressly agreed that her employment relationship is at-will in her employment application and that only the superintendent could change that in a signed writing.

18. Plaintiff's public policy claim is preempted by her retaliation and whistleblower claims as a matter of law.

19.   Plaintiff cannot establish an Employee Right to Know Act claim when the Board's report was privileged when requested.

20.   Plaintiff's conclusory disability retaliation claims fail to state a claim.  Even if it did, she cannot show causation given her allegation in Paragraph 146 of the Amended Complaint that Nagi's actions were the result of a falling out with Elhady and to coerce and intimidate Hadwan.

21.   Plaintiff's First Amendment allegations cannot exist outside of a Section 1983 claim, which she did not bring.  Even if she did, HPS would be entitled to governmental immunity and Plaintiff did not allege HPS had a violative policy or practice.  Plaintiff also did not allege she engaged in protected activity sufficient to support her free speech claim. She did not nothing but make a passing reference to a freedom of religion claim.

On December 23, 2024, Defendant sought concurrence in the relief requested in this Motion via a detailed email listing the 21 enumerated reasons for dismissal.  Mr. Nagi concurred with the dismissal, but Plaintiff's counsel did not concur.  Defendant, therefore, respectfully requests that this Court grant its Motion to Dismiss, dismiss Plaintiff's Amended Complaint with prejudice, and award Defendant its costs, attorneys' fees, and any other relief this Court deems equitable. In support of its Motion and the relief requested therein, Defendant relies on the following brief in support.

Respectfully submitted,

/s/*Anne-Marie V. Welch*
**CLARK HILL PLC**
**ANNE-MARIE V. WELCH (P70035)**
Attorney for Defendant
Hamtramck Public School District
220 Park St., Ste 200
Birmingham, MI  48009
awelch@clarkhill.com
(248) 988-1810

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**WAFA AL-HADWAN**,                                      Case No. 2:24-CV-13405

                Plaintiff,                    Hon.  Jonathan J.C. Grey
                                    Mag. Judge Anthony P. Patti

      v.

**HAMTRAMCK PUBLIC SCHOOL DISTRICT**,
A Municipal Corporation, and **NABIL NAGI**, in
his individual and official capacity,

                Defendants.
_____

**ELDER BRINKMAN LAW, PLLC**           **CLARK HILL PLC**
**AZZAM E. ELDER (P53661)**             **ANNE-MARIE V. WELCH (P70035)**
Attorney for Plaintiff                  Attorney for Defendant
1360 Porter Street, Suite 200           220 Park St., Ste 200
Dearborn, MI  48124                     Birmingham, MI  48009
aelder@elderbrinkman.com                awelch@clarkhill.com
Tel: (313) 946-2000                     Tel.: (248) 988-1810

                                         **AHMAD A. CHEHAB (P75560)**
                                         **MILLER, CANFIELD, PADDOCK**
                                       **AND STONE, P.L.C.**
                                       Co-Counsel for Defendant Hamtramck
                                       Public Schools
                                       150 W. Jefferson Ave. Ste. 2500
                                       Detroit, MI  48226
                                       (313) 963-6420
                                       Chehab@millercanfield.com
                                       **RJ LANDAU PARTNERS, PLLC**
                                       **RICHARD J. LANDAU (P42223)**
                                       Attorney for Defendant Nabil Nagi
                                       5340 Plymouth Road, Suite 200
                                       Ann Arbor MI  48105
                                       Rjlandau@rjlps.com
                                       Tel.: (734) 369-5850

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS

# **TABLE OF CONTENTS**

ISSUES PRESENTED ................................................................................................ VIII

INTRODUCTION ......................................................................................................... 1

UNDISPUTED FACTS AS PLEAD OR SUPPORTED BY DOCUMENTS REFERENCED IN
THE AMENDED COMPLAINT ................................................................................... 1

STANDARD OF REVIEW ........................................................................................... 3

LEGAL ANALYSIS ..................................................................................................... 4

I.   PLAINTIFF'S ELCRA RETALIATION CLAIM FAILS ........................................ 4
    A.  Plaintiff did not Engage in Protected Activity Before Nagi's Complaint ................. 5
    B.  Plaintiff's Investigation and Leave were not Adverse Actions ............................... 7
    C.  Plaintiff Cannot Establish Significant Factor Causation ....................................... 7
    D.  Plaintiff Cannot Establish Pretext ...................................................................... 8

II.  PLAINTIFF CANNOT ESTABLISH HER CLAIMS OF DISCRIMINATION ............. 9
    A.  Plaintiff Cannot State a Prima Facie Case of Discrimination ................................ 9
    B.  Plaintiff has Not Alleged the Remaining Elements ............................................ 10
    C.  Plaintiff Cannot State a Prima Facie Case of Harassment. ................................ 11

III.  PLAINTIFF FAILED TO STATE A CLAIM UNDER THE WPA. ........................... 13

IV.  DEFENDANTS ARE IMMUNE FROM TORT LIABILITY. ................................. 15

V.   PLAINTIFF DOES NOT STATE SLANDER AND FALSE LIGHT. ....................... 17

VI.  PLAINTIFF HAS FAILED TO STATE IIED. ..................................................... 18

VII.  PLAINTIFF HAS FAILED TO STATE A BREACH OF CONTRACT ................... 18

VIII. COUNTS IX AND X DO NOT STATE TORTIOUS INTERFERENCE ................. 21

IX.   THERE IS NO IMPLIED CONTRACT ............................................................ 21

X.   PLAINTIFF'S PUBLIC POLICY CLAIM IS PREEMPTED .................................. 21

XI.   PLAINTIFF CANNOT ESTABLISH A VIOLATION OF RTKA. ........................... 22

XII.  CONCLUSORY DISABILITY RETALIATION CLAIM FAILS ............................. 23

XIII. CONSTITUTIONAL CLAIMS ARE NOT PROPERLY PLEAD ........................... 24

L3414\460328\280138335

# <u>INDEX OF AUTHORITIES</u>

<u>C<small>ASES</small></u>

*Ahmed v. Sch. Dist. of City of Hamtramck*
　No. 2:22-CV-11127, 2024 WL 4234641, at *2 (E.D. Mich. Aug. 26, 2024)........................ 7, 14
*Ashker v. Ford Motor Co.*
　No. 188647, 1997 WL 33354478, at *3 (Mich. Ct. App. Jan. 21, 1997)...................................... 16
*B & H Med, LLC v. Air Supply, Inc*
　2014 WL 61133, at *2 (Mich Ct App Jan 2, 2014) ................................................................. 20
*Bank of Am, NA v First Am Title Ins Co*
　499 Mich 74 (2016) ............................................................................................................... 20
*Barrett v Kirkland Community College*
　245 Mich App 306 (2001)................................................................................................. 5, 23
*Barrett v. Kirtland Cmty. Coll.*
　628 N.W.2d 63 (Mich.Ct.App.2001) ....................................................................................... 8
*Bassett v. National Collegiate Athletic Assoc.*
　528 F.3d 426 (6th Cir. 2008) ................................................................................................... 4
*Blick v. Ann Arbor Pub. Sch. Dist.*
　105 F.4th 868 (6th Cir. 2024)................................................................................................. 25
*Blick v. Ann Arbor Pub. Sch. Dist.*
　516 F. Supp. 3d 711 (E.D. Mich. 2021)..................................................................................... 4
*Bradley v Saranac Cty Sch Bd of Educ*
　455 Mich 285 (1997) ............................................................................................................... 4
*Burger v. Ford Motor Co.*
　No. 307312, 2014 WL 132444, at *4 (Mich. Ct. App. Jan. 14, 2014) ........................................ 16
*Burns v. City of Detroit*
　253 Mich. App. 608 (2002)..................................................................................................... 25
*Burns v. City of Detroit*
　468 Mich. 881 (2003)............................................................................................................. 25
*Center for Bio-Ethical Reform, Inc. v. Napolitano*
　648 F.3d 365 (6th Cir. 2011) ................................................................................................... 4
*Cox v. Dep't of Transp.*
　No. 278452, 2008 WL 4005027, at *2 (Mich. Ct. App. Aug. 28, 2008)............................... 15, 16
*DeFlaviis v. Lord & Taylor, Inc.*
　223 Mich.App. 432 (1997)..................................................................................................... 23
*Dolan v Continental*
　454 Mich 373 (1997) ............................................................................................................. 22
*Dortman v. ACO Hardware, Inc.*
　405 F.Supp.2d 812 (E.D.Mich.2005) ...................................................................................... 16
*Dzierwa v Mich Oil Co*
　152 Mich App 281 (1986)....................................................................................................... 17

*Edwards v Scripps Media, Inc*
  No. 18-10735, 2019 WL 2448654, at *1 (ED Mich June 10, 2019) ............................................ 22
*Galli v Kirkeby*
  398 Mich 527 (1976) ................................................................................................................ 15
*Ganson v Detroit Pub Sch*
  2021 WL 219225, at *3-4 (Mich Ct App Jan 21, 2021) ............................................................ 19
*Harris v. Am. Postal Workers Union*
  198 F.3d 245 (6th Cir. 1999) .................................................................................................... 20
*Haynie v State*
  468 Mich 302 (2003) ................................................................................................................ 11
*Hoffman v Bay City Sch Dist*
  137 Mich App 333 (1984) ......................................................................................................... 22
*Interquim, S.A. v Berg Imports, LLC*
  2022 WL 790802, at *6 (ED Mich 2022) .................................................................................. 21
*InterVarsity Christian Fellowship/USA v. Board of Governors of Wayne State University*
  534 F.Supp.3d 785 (2021) ......................................................................................................... 24
*Kendzierski v. Macomb Cnty.*
  503 Mich. 296 (2019) ............................................................................................................... 21
*Kreipke v. Wayne State Univ.*
  807 F.3d 768 (6th Cir. 2015) ...................................................................................................... 3
*Krohn v Sedgwick James of Michigan, Inc*
  244 Mich App 289 (2001) ......................................................................................................... 12
*Laurel Woods Apartments v Roumayah*
  274 Mich App 631 (2007) ......................................................................................................... 19
*Lewis-Smith v. W. Kentucky Univ.*
  85 F. Supp. 3d 885 (W.D. Ky. 2015), *aff'd* (Jan. 12, 2016) ........................................................ 6
*Lucas v Awaad*
  299 Mich App 345 (2013) ......................................................................................................... 18
*Mack v City of Detroit*
  467 Mich 186 (2002) ................................................................................................................ 15
*Major v. Village of Newberry*
  892 N.W.2d 402 (2016) .............................................................................................................. 9
*Mayville v Ford Motor Co*
  2006 WL 3040672, at *3 (Mich Ct App Oct 26, 2006) ............................................................ 11
*McCann v Midland Cnty Educ Servs Agency*
  2008 WL 2559281, at *14 (ED Mich June 23, 2008) ............................................................... 23
*McClements v Ford*
  473 Mich 373 (2005) ................................................................................................................ 22
*McLemore v. Detroit Receiving Hosp. & Univ. Medical Center*
  196 Mich.App. 391 (1992) ........................................................................................................ 23
*Miller v. Dep't of Corr.*
  No. 164862, 2024 WL 2109772, at *4 (Mich. May 10, 2024) ...................................................... 6
*Mills v. Barnard*
  869 F.3d 473 (6th Cir. 2017) ....................................................................................................... 3

L3414\460328\280138335

*Monell v. Department of Social Services*
   436 U.S. 658 (1978)......................................................................................... 25

*Ostoin v Waterford Twp Police Dept*
   189 Mich App 334 (1991)............................................................................... 23

*Pohutski v City of Allen Park*
   465 Mich 675 (2002) ...................................................................................... 16

*Puetz v Spectrum Health Hosps*
   324 Mich App 51 (2018).................................................................................. 17

*Quinto v Cross & Peters Co*
   451 Mich 358 (1996) ................................................................................. 11, 12

*Radtke v Everett*
   442 Mich. 368 (1993) ..................................................................................... 11

*Rouch v Enquirer & News*
   440 Mich 238 (1992) ...................................................................................... 17

*Sawabini v Desenberg*
   143 Mich App 373 (1985)................................................................................ 15

Shallal v Catholic Social Services
   455 Mich 604 (1997) ...................................................................................... 14

*Smith v Michigan Dept of Corr*
   765 F Supp 2d 973 (ED Mich 2011) ............................................................... 15

*Stanton v Anchor Bay Sch Dist et al*
   2020 WL 91573, at *3 (Mich Ct App Jan 7, 2020) ......................................... 16

*Stringwell v Ann Arbor Pub Sch Dist*
   262 Mich App 709 (2004)............................................................................... 15

*Thomas M Cooley L Sch v Doe 1*
   300 Mich App 245 (2013)............................................................................... 17

*Town v Michigan Bell Tel Co*
   455 Mich 688 (1997) ...................................................................................... 10

*Towns v. Mitsubishi Elec. Auto. Am., Inc.*
   No. CIV. 13-12043, 2015 WL 478210, at *12 (E.D. Mich. Feb. 5, 2015) .................... 8

*Trepanier v Natl Amusements, Inc*
   250 Mich App 578 (2002)............................................................................... 14

*Tudor v. Macomb Cnty.*
   2021 WL 2026116, at *11 (Mich Ct App May 20, 2021) ............................................ 7

*Turner v Bd of Hosp Managers of Hurley Med Ctr*
   2017 WL 2791451, at *4 (Mich Ct App June 27, 2017) .................................... 8

*Univ Pediatricians v Wilson*
   2021 WL 4228193, at *5-6 (Mich Ct App Sept 16, 2021) ............................... 20

*Walby v. City of Caro*
   No. 354155, 2021 WL 1941635, at *4 (Mich. Ct. App. May 13, 2021) ...................... 19

*Williams v Univ of Michigan*
   2010 WL 5129888, at *5 (Mich Ct App Dec 16, 2010) ................................................ 4

*Wolfgang v Dixie Cut Stone & Marble, Inc*
   2010 WL 199595, at *6 (Mich Ct App Jan 21, 2010) .......................................... 8, 12

iv

*Wolgast v. Tawas Area Sch. Dist. Bd. of Educ.*
  No. 15-CV-10495, 2015 WL 13660477, at *15 (E.D. Mich. Dec. 23, 2015) ........................... 13
*Wurtz v. Beecher Metro Dist.*
  495 Mich. 242 (2014) ........................................................................................................ 13
*Yeary v. Goodwill Indus.-Knoxville, Inc.*
  107 F.3d 443 (6th Cir. 1997) ............................................................................................... 4

S<span style="font-variant:small-caps">TATUTES</span>

MCL 15.232(h)(iii) .................................................................................................................... 4
MCL 600.2911 ................................................................................................................... 15, 17
MCL 691.1407(1) ..................................................................................................................... 15

R<span style="font-variant:small-caps">ULES</span>

MCR 2.113(C)(1) ...................................................................................................................... 19

L3414\460328\280138335

# INDEX OF CONTROLLING AUTHORITIES

*Ahmed v. Sch. Dist. of City of Hamtramck*
 No. 2:22-CV-11127, 2024 WL 4234641, at *2 (E.D. Mich. Aug. 26, 2024)...................... 7, 14
*Ashker v. Ford Motor Co.*
 No. 188647, 1997 WL 33354478, at *3 (Mich. Ct. App. Jan. 21, 1997)...................................... 16
*Barrett v. Kirtland Cmty. Coll.*
 628 N.W.2d 63 (Mich.Ct.App.2001)..................................................................................... 8
*Blick v. Ann Arbor Pub. Sch. Dist.*
 105 F.4th 868 (6th Cir. 2024).............................................................................................. 25
*Blick v. Ann Arbor Pub. Sch. Dist.*
 516 F. Supp. 3d 711 (E.D. Mich. 2021)................................................................................ 4
*Burger v. Ford Motor Co.*
 No. 307312, 2014 WL 132444, at *4 (Mich. Ct. App. Jan. 14, 2014) ........................................ 16
*Burns v. City of Detroit*
 253 Mich. App. 608 (2002) .................................................................................................. 25
*Center for Bio-Ethical Reform, Inc. v. Napolitano*
 648 F.3d 365 (6th Cir. 2011) ............................................................................................... 4
*Cox v. Dep't of Transp.*
 No. 278452, 2008 WL 4005027, at *2 (Mich. Ct. App. Aug. 28, 2008)................................. 15, 16
*DeFlaviis v. Lord & Taylor, Inc.*
 223 Mich.App. 432 (1997).................................................................................................... 23
*Dolan v Continental*
 454 Mich 373 (1997) ........................................................................................................... 22
*Dortman v. ACO Hardware, Inc.*
 405 F.Supp.2d 812 (E.D.Mich.2005) .................................................................................... 16
*Edwards v Scripps Media, Inc*
 No. 18-10735, 2019 WL 2448654, at *1 (ED Mich June 10, 2019) ............................................ 22
*Harris v. Am. Postal Workers Union*
 198 F.3d 245 (6th Cir. 1999)................................................................................................ 20
*Interquim, S.A. v Berg Imports, LLC*
 2022 WL 790802, at *6 (ED Mich 2022) .............................................................................. 21
*InterVarsity Christian Fellowship/USA v. Board of Governors of Wayne State University*
 534 F.Supp.3d 785 (2021)..................................................................................................... 24
*Kendzierski v. Macomb Cnty.*
 503 Mich. 296 (2019) .......................................................................................................... 21
*Kreipke v. Wayne State Univ.*
 807 F.3d 768 (6th Cir. 2015) .............................................................................................. 3
*Krohn v Sedgwick James of Michigan, Inc*
 244 Mich App 289 (2001)..................................................................................................... 12
*Lucas v Awaad*
 299 Mich App 345 (2013).................................................................................................... 18

L3414\460328\280138335

*Major v. Village of Newberry*
  892 N.W.2d 402 (2016) .................................................................................. 9
*McCann v Midland Cnty Educ Servs Agency*
  2008 WL 2559281, at *14 (ED Mich June 23, 2008) .............................. 23
*Miller v. Dep't of Corr.*
  No. 164862, 2024 WL 2109772, at *4 (Mich. May 10, 2024) .................... 6
*Mills v. Barnard*
  869 F.3d 473 (6th Cir. 2017) ........................................................................ 3
*Monell v. Department of Social Services*
  436 U.S. 658 (1978) ................................................................................... 25
*Ostoin v Waterford Twp Police Dept*
  189 Mich App 334 (1991) .......................................................................... 23
*Pohutski v City of Allen Park*
  465 Mich 675 (2002) .................................................................................. 16
*Puetz v Spectrum Health Hosps*
  324 Mich App 51 (2018) ............................................................................ 17
*Quinto v Cross & Peters Co*
  451 Mich 358 (1996) ............................................................................ 11, 12
*Rouch v Enquirer & News*
  440 Mich 238 (1992) .................................................................................. 17
*Sawabini v Desenberg*
  143 Mich App 373 (1985) .......................................................................... 15
Shallal v Catholic Social Services
  455 Mich 604 (1997) .................................................................................. 14
*Smith v Michigan Dept of Corr*
  765 F Supp 2d 973 (ED Mich 2011) .......................................................... 15
*Stringwell v Ann Arbor Pub Sch Dist*
  262 Mich App 709 (2004) .......................................................................... 15
*Thomas M Cooley L Sch v Doe 1*
  300 Mich App 245 (2013) .......................................................................... 17
*Town v Michigan Bell Tel Co*
  455 Mich 688 (1997) .................................................................................. 10
*Tudor v. Macomb Cnty.*
  2021 WL 2026116, at *11 (Mich Ct App May 20, 2021) ........................... 7
*Walby v. City of Caro*
  No. 354155, 2021 WL 1941635, at *4 (Mich. Ct. App. May 13, 2021) ...... 19
*Williams v Univ of Michigan*
  2010 WL 5129888, at *5 (Mich Ct App Dec 16, 2010) .............................. 4
*Wurtz v. Beecher Metro Dist.*
  495 Mich. 242 (2014) ................................................................................. 13
MCL 15.232(h)(iii) ........................................................................................... 4
MCL 600.2911 ......................................................................................... 15, 17
MCL 691.1407(1) ........................................................................................... 15

L3414\460328\280138335

## <u>ISSUES PRESENTED</u>

1.  Has Plaintiff failed to state a claim for which relief can be granted for Plaintiff's retaliatory harassment claim under ELCRA because retaliatory harassment does not exist independent of Title VII as a matter of law?

    Defendants answer:  Yes.

2.  Has Plaintiff failed to state a claim for which relief can be granted for ELCRA retaliation where she cannot show significant factor causation because she did not engage in protected activity before Nagi initiated an investigation into her relationship with Elhady, where Plaintiff admits Nagi's actions were the result of a fight with Elhady and to coerce and intimidate the Board President, her cousin, and where her non-renewal came more than a year after she engaged in any protected activity?

    Defendants answer: Yes.

3.  Has Plaintiff failed to state a claim for which relief can be granted that the investigation and leave are not adverse actions to support her ELCRA retaliation claim or her ELCRA discrimination claim as a matter of law?

    Defendants answer:  Yes.

4.  Has Plaintiff failed to state a claim for which relief can be granted that she cannot establish her ELCRA claims where she cannot show HPS' legitimate non-discriminatory and non-retaliatory reasons for her non-renewal were pretext for intentional discrimination or retaliation?

    Defendants answer:  Yes.

5.  Has Plaintiff failed to state a claim for which relief can be granted of ELCRA discrimination where she does not allege she was qualified to be the HR Specialist, and does not identify or allege that any non-male employees, non-Yemeni employees, or non-Muslim employees were treated better than her and that she cannot establish discriminatory animus where Nagi both approved her promotion and initiated the investigation into her misconduct?

    Defendants answer:  Yes.

6.      Has Plaintiff failed to state a claim for which relief can be granted as to her ELCRA discrimination claim where she has not alleged any conduct or speech related to her national origin, religion or sex and that a rumor that plaintiff may have been engaged in an extra marital affair is not sex-based harassment?

        Defendants answer:  Yes.

7.      Has Plaintiff failed to state an ELCRA discrimination claim for which relief can be granted because she did not put HPS on notice of her concerns to establish respondeat superior liability?

        Defendants answer:  Yes.

8.      Has Plaintiff failed to state an actionable claim for which relief can be granted under the WPA because it does not apply to contract employees seeking nonrenewal of their employment contract as a matter of law?

        Defendants answer:  Yes.

9.      Has Plaintiff failed to state a claim for which can be granted under the WPA because her conclusory allegations fail to state a claim and because she cannot establish causation where Nagi initiated his investigation before she allegedly engaged in protected activity?

        Defendants answer:  Yes.

10.     Has Plaintiff failed to state claims for which relief can be granted of slander and false light (Count IV), public policy (Count V), intentional infliction of emotional distress (Count VII), and tortious interference claims (Counts IX & X), all sound in tort and that HPS is immune from liability for all these claims, and Plaintiff has not plead her case in avoidance of immunity with respect to HPS?

        Defendants answer:  Yes.

11.     Has Plaintiff failed to state a tort claim for which relief can be granted where her attempt to plead in avoidance of governmental immunity with respect to Nagi destroyed any vicarious liability argument she had against HPS?

        Defendants answer:  Yes.

12.   Has Plaintiff failed to state a claim for which relief can be granted for slander and false light where her Complaint fails to contain any factual allegations that HPS broadcasted highly objectionable information about Plaintiff to the "public in general" that it knew was false and fails to state a claim where she does not identify with any specificity any comments allegedly made about her?

Defendants answer:  Yes.

13.   Has Plaintiff failed to state IIED claim where she does not allege any wrongdoing egregious enough to meet the extreme and outrageous requirement necessary to state her claim?

Defendant answer: Yes.

14.   Has Plaintiff' failed to state a claim in which relief can be granted where her contract is plead in name only and should be barred by governmental immunity?

Defendants answer:  Yes.

15.   Has Plaintiff failed to state a breach of contract claim where her allegations lack specificity and because there was no breach.

Defendants answer:  Yes.

16.   Has Plaintiff failed to state a claim of tortious interference against HPS as a matter of law because it cannot interfere with its own contract and because she cannot have a legitimate expectation of continued business relationship given her one-year contract term?

Defendants answer:  Yes.

17.   Has Plaintiff failed to state an implied claim for which relief can be granted where she expressly agreed that her employment relationship is at-will in her employment application and that only the superintendent could change that in a signed writing?

Defendants answer:  Yes.

18.   Has Plaintiff failed to state a public policy claim for which relief can be granted as it is preempted by her retaliation and whistleblower claims as a matter of law?

Defendants answer: Yes.

19.   Has Plaintiff failed to state an Employee Right To Know Act claim for which relief can be granted when the District's report was privileged when requested?

Defendants answer: Yes.

20.   Do Plaintiff's conclusory disability retaliation allegations fail to state a claim for which relief can be granted, especially where she cannot show causation given her allegation in Paragraph 146 of the Amended Complaint that Nagi's actions were the result of a falling out with Elhady and to coerce and intimidate Hadwan?

Defendants answer:  Yes.

21.   Has Plaintiff failed to state constitutional claims where First Amendment claims cannot exist outside of a Section 1983 claim, which she did not bring and that even if she did, HPS would be entitled to governmental immunity and where Plaintiff did not allege HPS had a violative policy or practice and did not allege she engaged in protected activity sufficient to support her claim?

Defendants answer:  Yes.

## INTRODUCTION

This case primarily involves three former friends and employees of Defendant Hamtramck Public Schools ("HPS").  Each are Yemini, Muslim.  Defendant Nagi promoted Plaintiff to be the HR Specialist, reporting to her friend Elhady.  Then, they turned against each other.  Plaintiff admits that "Nagi used his power as the interim superintendent to target and retaliate against the Plaintiff ***because of a fallout he had with the HR Director***, ***and to try to coerce and intimidate the School Board President, who was the Plaintiff's cousin***." [Ex. 1, Amended Complaint, ¶ 146].  That's not discrimination.

A nationally recognized employment attorney, Susan Hiser[1], conducted an independent investigation and found wrongdoing by Plaintiff, Elhady, and Nagi.  Each were each provided notice of the potential for non-renewal or termination and permitted to participate in a hearing to discuss their misconduct, and each were subject to the consequences of their actions.  Plaintiff's Amended Complaint alleges 13 separate counts of wrongdoing, but each fails to state a claim.

### UNDISPUTED FACTS AS PLEAD OR SUPPORTED BY DOCUMENTS REFERENCED IN THE AMENDED COMPLAINT

- Plaintiff is a Muslim, Yemeni female. [Ex. 1, ¶96].
- Since early 2022, Plaintiff tried to get Nagi to quash "rumors" other employees were spreading about her. [Ex. 1, ¶20].
- Sometime, Nagi commented about how if "rumors" got out to an unspecified

---

[1] https://www.calzonehiser.com/attorneys/ (last visited December 19, 2024).

1

community, it could compromise Plaintiff's safety and employment. [Ex. 1, ¶24].

- At an undisclosed time in 2022, Plaintiff brought an inappropriate and pornographic book to Defendants' attention.   She spoke up to undisclosed individuals about parental rights and the need to protect students. [Ex. 1, ¶17].

- *After* Plaintiff tried to get Nagi to quash rumors about her in early 2022, Defendant Nagi *promoted* Plaintiff to be the HR Specialist in July 2022 for a one-year term, reporting to her friend, HR Director Elhady. [Ex. 1, ¶2-3, Ex. 2].

- On August 11, 2022, Plaintiff was present during a discussion in the common area of the Central Office with unidentified individuals regarding "sexually explicit content [she believed was] disguised as LGBTQ books".   She expressed her opinion to undisclosed individuals during this discussion that the content could be offensive towards LGBTQ individuals. On August 15, someone claimed Plaintiff was calling the "offensive" books "inappropriate."  [Ex. 1, ¶17].

- On September 5 and 8, 2022, Maros and Poskovic brought complaints about Nagi to Plaintiff, in her capacity as HR Specialist. [Ex. 1, ¶34-35].

- On September 9, Nagi moved HR, as well as other positions, to other offices and Plaintiff and Elhady would no longer be sharing an office. [Ex. 1, ¶32; Ex. 8]. Plaintiff gave an "ultimatum" to Nagi that if he separated their offices, she would file a Title IX complaint. [Ex. 1, ¶62; Ex. 3; Ex. 8].   Nagi, at the same time, had been "acting beyond the scope of his role and authority" by collecting video evidence concerning Plaintiff's inappropriate workplace relationship with Elhady. [Ex. 1, ¶77].

- On September 13, Nagi saw Plaintiff in the Title IX office. [Ex. 1, ¶63].

- On September 15, Heather Dorogi filed a complaint alleging unethical conduct by Plaintiff and Elhady.  [Ex.1, ¶65; Ex. 4].

- Around this time, Elhady told Nagi to follow the law, and around the same time, Elhady informed Nagi of the complaints by others. [Ex.1, ¶40-42].  Plaintiff shared "similar concerns" with "administration," but does not identify what was shared or with whom she spoke.  [Ex. 1, ¶42].

- Elhady reported complaints to the Board President on October 3. [Ex. 1, ¶45].

- On October 4, the Board President held a meeting, at which time he indicated that he would be hiring outside counsel to investigate the culture of HPS and allegations of suspected wrongdoing. [Ex. 1, ¶44].

- Susan Hiser, was engaged to conduct this investigation on October 5, 2022.  Ex. 3.

- On October 5, Nagi suspended Elhady on complaints of sexual harassment and favoritism towards Plaintiff.  [Exs. 5-6].

- On October 6, Nagi, "acting beyond the scope of his role and authority," made a report to the Board that he believed Elhady had engaged in an inappropriate relationship with his subordinate, Plaintiff.  HPS investigated the concern.  Nagi

shared video footage with the investigator. Undisclosed third parties shared with Plaintiff and her family that if she did not back down and quit "some video would be released." [Ex. 1, ¶¶69, 77, 82, 83; Ex. 6].

- Hiser was engaged to investigate Nagi's concerns on October 7, 2022. [Ex. 7].
- On October 7, Plaintiff filed an OCR complaint about something. Also on October 7, 2022, Plaintiff emailed the Board. [Ex. 1, ¶26].
- On October 12, Plaintiff spoke at a public board meeting. [Ex. 1. ¶66]. That day she was discovered reviewing the Title IX Coordinator's personnel file by another member of HR, Cystal Norman. Norman told Nagi and Joanne McBryer. Plaintiff then sent two emails to the Board complaining that the Title IX Coordinator was not qualified for her position. [Ex. 3; Exs. 9 -10].
- On October 17, 2022, Plaintiff was placed on administrative leave with full pay and benefits pending investigation into an allegation that she accessed unauthorized personnel files and used them to retaliate against the Title IX Coordinator who was investigating her. [Ex. 1, ¶68; Exs. 11-12].
- Hiser's Report found wrongdoing by Nagi, Al-Hadwan, and Elhady. [Ex. 3].
- On March 14, 2024, HPS sent Plaintiff a notice of non-renewal for unauthorized access to personnel files of Title IX coordinator and retaliation of the coordinator. [Ex. 13].
- Elhady, Al-Hadwan, and Nagi each had the opportunity to be heard on April 25, 2024. [Ex. 14].
- On April 29, 2024, Plaintiff received notice of her non-renewal effective June 30, 2024. [Ex. 15].
- Nagi and Elhady were likewise separated. [Ex. 14].

## STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff must allege facts sufficient to state a claim for relief that is "plausible on its face" and, when accepted as true, is sufficient to "raise a right to relief above the speculative level." *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017) (citation omitted). "The complaint must 'contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) (citation omitted). A court must accept as true all factual

3

allegations, but need not accept any legal conclusions. *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011).

The Court may consider the First Amended Complaint and any Exhibits attached thereto, items appearing in the record of the case, and documents attached to Defendant's Motion to Dismiss provided such are referenced in the First Amended Complaint and central to the claims therein. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *Yeary v. Goodwill Indus.-Knoxville, Inc.,* 107 F.3d 443, 445 (6th Cir. 1997)  (extrinsic materials may be considered if they "filled in the contours and details" of a complaint). The Court may also consider public records and matters of which it may take judicial notice.[2] *Blick v. Ann Arbor Pub. Sch. Dist.,* 516 F. Supp. 3d 711, 720 (E.D. Mich. 2021) (cleaned up).

## LEGAL ANALYSIS

### I.    PLAINTIFF'S ELCRA RETALIATION CLAIM FAILS

Count I alleges retaliation and "retaliatory harassment" under ELCRA. Plaintiff's claim for "retaliatory harassment" must be dismissed, as a claim for "retaliatory harassment" does not exist independent of Title VII. *See Williams v Univ of Michigan*, 2010 WL 5129888, at *5 (Mich Ct App Dec 16, 2010) (declining to recognize the plaintiff's retaliatory harassment claim under a Michigan civil rights law

---

[2] Public employees' personnel records are public records subject to FOIA disclosure. MCL 15.232(h)(iii); *Bradley v Saranac Cty Sch Bd of Educ,* 455 Mich 285 (1997).

in the absence of a Title VII claim).  [Ex. 16].

To establish her prima facie case of ELCRA retaliation, Plaintiff must show: (1) she engaged in protected activity; (2) known by HPS; (3) HPS took adverse employment action against her; and (4) there was a causal connection between the protected conduct and the adverse employment action. *Barrett v Kirkland Community College*, 245 Mich App 306, 314 (2001). She must show her participation in protected activity was a "significant factor" in the decision to terminate her—not just that there was a causal link between the two. *Id.*

Plaintiff alleges the following retaliatory actions: (a) Nagi launched an investigation of Plaintiff using videos he had obtained; (b) Nagi placed Plaintiff on paid leave while the investigation was conducted; and then (c) HPS fabricated the reasons ultimately used to non-renew her employment contract.

### A. Plaintiff did not Engage in Protected Activity Before Nagi's Complaint

For "protected activity," Plaintiff alleges she:

1. Was closely associated with "other whistleblowers[.]"   [Ex. 1, ¶ 110].
2. Opposed ELCRA violations; filed complaints against Nagi for violating ELCRA; "assisted other victims" protected under ELCRA; participated in an investigation, proceedings, and hearings related to ELCRA violations. [Ex. 1, ¶113].
3. "[R]eported the discriminatory conduct, retaliation, and hostile environment to which she witnessed numerous female employees be subjected to discrimination and retaliation by Defendant Nagi…" and "spoke up about Nagi and his discrimination against other female and minority employees." [Ex. 1, ¶ 110].

Plaintiff's associational retaliation claim fails where she does not allege that Defendants' actions towards her were intended to retaliate against these undisclosed

5

whistleblowers she was closely associated with, instead she claims Defendants intended to retaliate against her. *Miller v. Dep't of Corr.,* No. 164862, 2024 WL 2109772, at *4 (Mich. May 10, 2024) (plaintiffs' allegation that defendant fired them to retaliate against an employee who engaged in protected activity alleges a violation of ELCRA). [Ex. 16].

Plaintiff only states in conclusory fashion that she "opposed violations under ELCRA." [Ex. 1, ¶ 85]. Plaintiff does not detail how this alleged opposition manifested itself.  She claims she "participated in investigation, proceedings, and hearings of Defendant Nagi violating the ELCRA," but makes no allegations about any formal proceedings against Nagi, or any hearing held regarding Nagi. [Ex.1, ¶ 113].

To the extent that Plaintiff alleges that her presence in the October 4 meeting is protected activity, she does not allege that she did anything but be present at this meeting as an HR representative, which addressed the "culture" at HPS and issues "throughout the district" that did not involve her. She said in response she "expressed concerns," which would be expected of from a HR representative at such a meeting. [Ex.1, ¶ 47].  Vaguely "assisting other victims" is not recognized as "protected activity" for HR. See *Lewis-Smith v. W. Kentucky Univ.,* 85 F. Supp. 3d 885 (W.D. Ky. 2015), *aff'd* (Jan. 12, 2016) (employee did not engage in protected activity on behalf of others merely by virtue of her role in university's personnel department).

The only potential protected conduct in which Plaintiff could have engaged was

her OCR filing, which came the day *after* Plaintiff alleges Nagi reported her alleged inappropriate relationship to the Board and her subsequent email and presentation to the board.  Plaintiff's allegations, are insufficient to maintain a claim of retaliation on this basis as the sequencing is incorrect.  Her complaints happened AFTER Nagi's alleged retaliatory complaint against her.

### B.  Plaintiff's Investigation and Leave were not Adverse Actions

Even if Plaintiff could establish that she engaged in protected activity and Defendant's awareness of it, she cannot show that she was subject to an adverse employment action based upon her investigation and leave. *Ahmed v. Sch. Dist. Of City of Hamtramck*, No. 2:22-CV-11127, 2024 WL 4234641, at *9 (E.D. Mich. Aug. 26, 2024) ("[r}equiring an employee to retain their title in name only pending an investigation continues to be a reasonable carveout in employment discrimination law); *Tudor v. Macomb Cnty.,* 2021 WL 2026116, at *11 (Mich Ct App May 20, 2021) [Ex. 16]. (adopting Sixth Circuit's "unanimous" holding that paid administrative leave not an adverse employment action). Logically, actions taken in connection with a timely, external investigation into Plaintiff, such as detailing the reasons for the investigation and the collection and turnover of video footage, is not an adverse action.

### C.  Plaintiff Cannot Establish Significant Factor Causation

To meet the causation element, Plaintiff's protected activity must be a significant factor, likened to but-for causation of her adverse action.  *Towns v. Mitsubishi Elec.*

*Auto. Am., Inc.,* No. CIV. 13-12043, 2015 WL 478210, at *12 (E.D. Mich. Feb. 5, 2015) (citing *Barrett v. Kirtland Cmty. Coll.*, 628 N.W.2d 63, 70 (Mich.Ct.App.2001)). Plaintiff admits that Nagi's actions were not in retaliation for anything she did, but were really "because of a fallout he had with the HR Director [Elhady], and to try to coerce and intimidate the School Board President, who was the Plaintiff's cousin*." Id.* ¶ 146. It follows that Plaintiff cannot show her protected activity was a significant factor in Nagi's conduct.

Plaintiff also does not allege that she experienced a change in her employment soon after she allegedly engaged in any protected activity. Indeed, Plaintiff received full pay and benefits and did not receive her notice of potential non-renewal for 18 months after her alleged protected activity. *See Wolfgang v Dixie Cut Stone & Marble, Inc*, 2010 WL 199595, at *6 (Mich Ct App Jan 21, 2010) (22 days between return from leave and termination insufficient on its own to establish causation); *Turner v Bd of Hosp Managers of Hurley Med Ctr*, 2017 WL 2791451, at *4 (Mich Ct App June 27, 2017) (nine days between investigation and complaint without more insufficient to establish causation). [Ex. 16].

### D. Plaintiff Cannot Establish Pretext

Plaintiff claims HPS retaliated against Plaintiff by refusing to follow the investigator's recommendation that advised that she should be reinstated. Plaintiff further alleges "NO evidence exists of any wrongdoing by Plaintiff." [Ex. 1, ¶¶85, 98].

8

Not so.  Hiser's investigation report concludes otherwise.  [Ex. 3; Ex. 7].  After sharing the results of the report via a draft letter, Plaintiff admits that her counsel threatened to sue anyone involved in attacking Plaintiff's character and chastity.  [Ex. 1, ¶92].  The non-renewal letter Plaintiff ultimately received, which was subject to FOIA, did not make any reference to Hiser's findings with respect to her conduct with respect to Elhady. [Ex. 11]. After learning Nagi assigned Dorogi to investigate potential misconduct between Elhady and Plaintiff, Plaintiff was witnessed reviewing Dorogi's personnel file.  She then sent a letter to the Board disputing Dorogi's qualification.  [Ex. 11; Ex. 3, at FN 105; Ex. 9].   Even if Plaintiff's non-renewal in 2024 could be seen as adverse action for allegedly engaging in protected activity years prior, Plaintiff cannot establish pretext to rebut Defendant's legitimate nonretaliatory reason for her non-renewal – that it honestly believed Plaintiff had reviewed Dorogi's file to support her letter to the Board.  *Major v. Village of Newberry*, 892 N.W.2d 402 (2016).

## II.   PLAINTIFF CANNOT ESTABLISH HER CLAIMS OF DISCRIMINATION

Plaintiff erroneously claims Nagi discriminated against her on the basis of her protected class as a female, and also targeted her because of her religion (Muslim) and national origin (Yemini background). [Ex. 1, ¶124].  She alleges she filed complaints against Nagi and Defendant failed to take prompt remedial action.  [Ex. 1, ¶128].

### A. Plaintiff Cannot State a *Prima Facie* Case of Discrimination

To maintain a prima facie case of discrimination, Plaintiff must allege that she

9

was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct. *Town v Michigan Bell Tel Co*, 455 Mich 688, 695 (1997).

Like her retaliation claim, Plaintiff alleges Defendants engaged in adverse employment actions when Nagi allegedly: initiated Title VII and Title IX investigations against Plaintiff; placed Plaintiff on paid administrative leave; attacked Plaintiff's reputation; set up "retaliatory" investigations of Plaintiff to "preempt and distract any investigations of his violations of law"; and tried to force a "quite [sic] firing" by accusing her of an extramarital affair.  [Ex. 1, ¶131]. As discussed above, these are not adverse employment actions.   And, Plaintiff cannot establish pretext for the only adverse action about which she complains – her nonrenewal.  *See* Section I, *supra*.

### 1.  Plaintiff has Not Alleged the Remaining Elements.

Plaintiff does not allege that she was qualified to be the Human Resources Specialist, and her job application shows that she has no work experience or degree related to human resources. She also does not identify any similarly-situated male employees, non-Yemeni employees, or non-Muslim employees who were treated better than her. Indeed, both Nagi and Elhady suffered the same fate.

Moreover, it is illogical that Nagi, who was familiar with Plaintiff, would sign off on her paperwork for the job, but then establish an animus against her and

discriminate her in the less than three months she held the position prior to be placed on leave. The same-actor inference may be applied at the discretion of the Court where the hirer and alleged bad actor (here, Nagi) are the same individual and the adverse occurs in a relatively short time span after the hiring. It establishes "a strong inference that discrimination was not a determining factor for the adverse action." *Town v. Michigan Bell Tel. Co.,* 455 Mich. 688, 701 (1997).

### B. Plaintiff Cannot State a *Prima Facie* Case of Harassment.

To the extent that Count II is a claim of hostile work environment harassment, Plaintiff's claim fails. To sustain her claim for harassment, Plaintiff must demonstrate: (1) she belonged to a protected group; (2) she was subjected to communication or conduct on the basis of the protected status; (3) she was subject to unwelcome conduct or communication involving the protected status; (4) the unwelcome conduct was intended to or in fact did substantially interfere with her employment or created an intimidating, hostile, or offensive work environment; and (5) *respondeat superior.* *Quinto v Cross & Peters Co,* 451 Mich 358, 368-369 (1996); *Radtke v Everett,* 442 Mich. 368, 382-383 (1993). Only conduct or communication that is of the nature of the protected characteristic can constitute actionable harassment based on that characteristic. *See Mayville v Ford Motor Co,* 2006 WL 3040672, at *3 (Mich Ct App Oct 26, 2006) (race) [Ex. 16]; *Haynie v State*, 468 Mich 302, 317 (2003) (sex). The same is presumed true of harassment based on religion and national origin.

"[W]hether a hostile work environment was created by the unwelcome conduct [is] determined by whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Quinto v Cross & Peters Co*, 451 Mich 358, 369 (1996) (cleaned up). Plaintiff alleges that other employees (not Nagi) were accusing her of having an affair with a fellow employee. [Ex. 1, ¶22]. Plaintiff concludes that the rumors were "intended to attack her chastity and reputation as a married woman within the Yemeni community." *Id.* While rumors about an extramarital affair may seem adjacent to Plaintiff's sex, she does not allege any unwelcome conduct or communication that makes reference to any protected characteristic, including her sex, religion or national origin. *Hazel, supra.* Similarly, Nagi's offhand comment that these rumors could be harmful to Plaintiff was at most a stray remark made outside the context of any adverse employment action and therefore not evidence of any discriminatory animus. *See Wolfgang*, 2010 WL 199595, at *2 (isolated remarks made outside and two months prior to termination not direct evidence) (citing *Krohn v Sedgwick James of Michigan, Inc*, 244 Mich App 289, 301-302 (2001)). This alone is fatal to her claim. At most, she makes vague, conclusory allegations about behavior by Nagi to which she took offense. Oddly, the action that stemmed Plaintiff's Title IX ultimatum was Nagi's decision to discontinue Plaintiff's shared office with Elhady. [Ex.

10]. None of her allegations involve Nagi—or any other HPS employee—doing or saying anything severe or pervasive that invoked a protected characteristic.

Nonetheless, HPS had already engaged an investigator to address employee concerns about Nagi prior to Plaintiff voicing her own concerns to the Board. Her claim that Defendant failed to take prompt and adequate remedial action fails where Plaintiff, an HR Specialist, did not timely escalate her concerns as permitted by Defendant's Anti-Harassment Policies. Plaintiff cannot establish respondeat superior. [Ex. 3].

## III.    PLAINTIFF FAILED TO STATE A CLAIM UNDER THE WPA.

Plaintiff cannot bring an action under the WPA because it "does not apply to contract employees seeking renewal of their employment contract." *Wurtz v. Beecher Metro Dist.*, 495 Mich. 242, 259 (2014). *see also Wolgast v. Tawas Area Sch. Dist. Bd. of Educ.,* No. 15-CV-10495, 2015 WL 13660477, at *15 (E.D. Mich. Dec. 23, 2015), *report and recommendation adopted,* No. 15-CV-10495, 2016 WL 4150734 (E.D. Mich. Aug. 5, 2016), *aff'd,* No. 16-2240, 2017 WL 3976702 (6th Cir. May 25, 2017) [Ex. 16] ("[T]he non-renewal of a contract is not actionable under the WPA.") (internal quotations omitted). Plaintiff's contract expired June 30, 2023 and was not renewed. This is not actionable under the WPA.

Even if actionable, her claim fails. To establish *a prima facie* case under the Whistleblower Protection Act, Plaintiff must show that (1) she engaged in protected activity, (2) the Defendants discharged, threatened, or otherwise

13

discriminated against her, and (3) a causal connection exists between the two. MCL 15.362; *Shallal v Catholic Social Services, 455 Mich 604, 610 (1997). Under the WPA, "protected activity"* includes where a plaintiff: (1) reported a violation or suspected violation of a law or regulation to a public body, (2) was about to report such a violation to a public body, or (3) was asked by a public body to participate in an investigation. *Trepanier v Natl Amusements, Inc*, 250 Mich App 578, 583 (2002).

Plaintiff's WPA claim is based on her "[R]eport[ing] Defendant Nagi [sic] violations of law to the School Board, the EEOC, the OCR and to the HR Department." [Ex.1, ¶137]. She alleges in Paragraph 137 that she reported Nagi's violations of the law to the School Board many times from September 14, 2022 to October 17th, 2022[3], but her factual allegations only relate to one report made on October 7, 2022 and one on October 12, 2022, https://www.youtube.com/watch?v=-3-claMWj9k&t=8123s (start at 2:06). As set forth above, Plaintiff's sequencing is off as Nagi had already issued his complaint against her and engaged the outside investigator. The same rings true of her OCR complaint. Plaintiff's allegations also run contrary to her admission in Paragraph 146 of the Amended Complaint regarding Nagi's true motivations. Plaintiff's conclusory allegation that she was "discriminated against . . . as described

---

[3] Conversations with Hadwan cannot be imputed to the Board as a matter of law. *Ahmed v. Sch. Dist. of City of Hamtramck*, No. 2:22-CV-11127, 2024 WL 4234641, at *2 (E.D. Mich. Aug. 26, 2024). [Ex. 16].

regarding the terms, benefits, conditions, and privileges of [her] employment" lacks any detail whatsoever and is insufficient to state a claim. *Twombly, supra.* To the extent she is relying on any alleged adverse actions, *see Section I, supra*, pertaining to any allegations of adverse actions, pretext, and causation.

## IV.   DEFENDANTS ARE IMMUNE FROM TORT LIABILITY.

Plaintiff's slander and false light (Count IV), public policy (Count V), intentional infliction of emotional distress (Count VII), and tortious interference claims (Counts IX & X), all sound in tort. *See* MCL 600.2911 (slander); *Sawabini v Desenberg*, 143 Mich App 373, 381 (1985) (false light); *Smith v Michigan Dept of Corr*, 765 F Supp 2d 973, 985 (ED Mich 2011) (tortious interference); *Cox v. Dep't of Transp.,* No. 278452, 2008 WL 4005027, at *2 (Mich. Ct. App. Aug. 28, 2008) (public policy). [Ex. 16].

Under MCL 691.1407(1) "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." HPS is a school district of which Nagi was the highest ranking official. Plaintiff never alleges that any act committed by HPS was not part of its governmental function.  Operating public schools is a government function, as are the screening, hiring, termination, and supervision of school personnel. *See Galli v Kirkeby*, 398 Mich 527, 537 (1976); *Stringwell v Ann Arbor Pub Sch Dist*, 262 Mich App 709, 712 (2004).

HPS is immune from liability, and Plaintiff has not plead her tort claims against HPS in avoidance of immunity. *Mack v City of Detroit*, 467 Mich 186, 198-199 (2002);

*Pohutski v City of Allen Park*, 465 Mich 675, 682 (2002); *Stanton v Anchor Bay Sch Dist et al*, 2020 WL 91573, at *3 (Mich Ct App Jan 7, 2020). [Ex. 1, ¶5, 7; Ex. 16].

Plaintiff's attempt to plead in avoidance of governmental immunity with respect to Nagi destroys any vicarious liability argument she had against HPS.  Plaintiff alleges that Nagi ***was acting outside the scope of his role and authority*** when he retaliated against anyone who filed a complaint against him, silenced his victims, collected video surveillance of Plaintiff and tried to use it to coerce and intimidate Plaintiff by making false accusations to shame her in the Yemeni community, and created a false and baseless investigation of Plaintiff.  [Ex. 1. ¶59, 71, 76, 77].  Accordingly, even if HPS was not protected by governmental immunity (which it is), Plaintiff cannot establish the vicarious liability required to make a claim against HPS for the aforementioned torts.  *Ashker v. Ford Motor Co.,* No. 188647, 1997 WL 33354478, at *3 (Mich. Ct. App. Jan. 21, 1997) (Ford not liable for IIED where leaving offensive material on plaintiff's desk was not in scope of employment) [Ex. 16]; *Dortman v. ACO Hardware, Inc.*, 405 F.Supp.2d 812, 825–26 (E.D.Mich.2005) (employer liable only if employee's slanderous statement was within the scope of his authority); *Cox,* 2008 WL 4005027, at *2 (employer only liable for public policy claim if tortfeasor was acting within the scope of authority); *Burger v. Ford Motor Co.*, No. 307312, 2014 WL 132444, at *4 (Mich. Ct. App. Jan. 14, 2014) (Ford Motor would not be liable for Davis's alleged tortious interference outside scope of authority). [Ex. 16].

## V.   PLAINTIFF DOES NOT STATE SLANDER AND FALSE LIGHT.

Even if Plaintiff's claims of slander and false light are not barred, to state a claim

Plaintiff must allege  (1) Defendant made a false and defamatory statement concerning

her; (2) an unprivileged publication to a third party; (3) fault amounting to at least

negligence on the part of the publisher; and (4) either actionability of the statement

irrespective of special harm (defamation per se) or the existence of special harm caused

by the publication (defamation per quod). *See, e.g.,* MCL 600.2911; *Rouch v Enquirer*

*& News*, 440 Mich 238, 251 (1992). "A plaintiff claiming defamation must plead a

defamation claim with specificity by identifying the exact language that the plaintiff

alleges to be defamatory." *Thomas M Cooley L Sch v Doe 1*, 300 Mich App 245, 262–

63 (2013). To maintain her claim for false-light invasion of privacy, Plaintiff must show

that HPS broadcasted to the public in general, or to a large number of people,

information that was unreasonable and highly objectionable by attributing to the

plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a

false position. *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 69, (2018)

Plaintiff's Complaint fails to contain any factual allegations against the HPS with

respect to broadcasted highly objectionable information about Plaintiff to the "public in

general" that it knew was false. At most, she alleges the existence of office gossip

spread by secretaries and aides.  [Ex. 1 ¶142].  This is insufficient to maintain her

claims. *See, e.g., Dzierwa v Mich Oil Co*, 152 Mich App 281, 288 (1986) (false-light

17

claim failed because communications "occurred only in the presence of other employees or, at most, a handful of office visitors"). Plaintiff also does not identify with any specificity any comments allegedly made about her, and she herself alleges that any such comments were workplace rumors.

## VI. PLAINTIFF HAS FAILED TO STATE IIED.

To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. The conduct complained of must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Lucas v Awaad*, 299 Mich App 345, 359 (2013).

Plaintiff alleges "Defendants knew they were in violation of state law designed to protect vulnerable employees and when Plaintiff attempted to get them to follow the law, they used unethical, slanderous, and untruthful tactics in retaliation." [Ex. 1, ¶178]. For example, she alleges she was made to attend a public meeting in the same room as Nagi. [Ex. 1, ¶178]. None of these allegations meet the "extreme and outrageous" requirement necessary to sustain her claim. *Cuevas*, 2017 WL 127737, at *4 (allegations of IIED fail where actions complained of were "not unusual or unexpected within an employment situation, and do not exceed the bounds of decency."). [Ex. 16].

## VII. PLAINTIFF HAS FAILED TO STATE A BREACH OF CONTRACT

18

Plaintiff alleges the existence of an employment contract with HPS and an alleged breach by "Defendants' unlawful conduct which violates state and federal laws[.]" [Ex. 1,¶190].  Plaintiff's contract claim is plead in name only and should be barred by governmental immunity.  "[W]hen a party breaches a duty stemming from a legal obligation, other than a contractual one, the claim sounds in tort." [regardless of its label] *Walby v. City of Caro,* No. 354155, 2021 WL 1941635, at *4 (Mich. Ct. App. May 13, 2021) (quoting *In re Bradley*, 494 Mich. at 384) (dismissing breach of contract claim on governmental immunity grounds). [Ex. 16].

Further, even if not viewed as a tort claim, Plaintiff's contract claim is improper. "If a claim or defense is based on a written instrument, a copy of the instrument or its pertinent parts ***must** be attached to the pleading* ...." MCR 2.113(C)(1) (emphasis added); *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635 (2007). Plaintiff's failure to attach a copy of her employment agreement to her Complaint merits dismissal of this claim. *See Ganson v Detroit Pub Sch*, 2021 WL 219225, at *3-4 (Mich Ct App Jan 21, 2021) (dismissal affirmed where plaintiff failed to attach entire agreement to his complaint and provide proof of promises). [Ex. 16].

In the absence of an attached employment agreement, Plaintiff fails to identify which (if any) provision of her employment agreement Defendants allegedly breached. She instead references board policies and vaguely references onboarding documentation. This too is fatal to her claim. *See, e.g.*, *Univ Pediatricians v Wilson*,

19

2021 WL 4228193, at *5-6 (Mich Ct App Sept 16, 2021), *appeal denied*, 509 Mich 975 (2022) (dismissal upheld where plaintiff could not identify an "actual provision" requiring the action plaintiff alleges defendant failed to take); *B & H Med, LLC v. Air Supply, Inc*, 2014 WL 61133, at *2 (Mich Ct App. Jan 2, 2014) (disposition proper where plaintiff did not plead that defendant "breached any particular contractual provision" or that there was any other contractual duty to not engage in the alleged wrongdoing). [Ex. 16]; *Harris v. Am. Postal Workers Union*, 198 F.3d 245 (6th Cir. 1999) (plaintiff's claim properly dismissed where she did not specifically allege or introduce the contractual terms violated).Assuming her claim could proceed even without reference to any contract provision, Plaintiff must establish that "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am, NA v First Am Title Ins Co*, 499 Mich 74, 100 (2016). Plaintiff's contract does not contain a provision that could have been breached by any of the conduct alleged in the Complaint, and nothing in her contract modifies the at-will nature of her employment, governs being placed on an administrative leave, or incorporates any civil rights statute. [Ex. 2].  There is *nothing to breach*.  And, Defendant did investigate Plaintiff's complaint via Hiser, and did afford Plaintiff due process with respect to her leave and nonrenewal, as stated in its communications regarding same.  Plaintiff's conclusory allegations fail.

## VIII.  COUNTS IX AND X DO NOT STATE TORTIOUS INTERFERENCE[4]

Plaintiff cannot establish interference with contractual relation without a breach of the employment contract. *Interquim, S.A. v Berg Imports, LLC,* 2022 WL 790802, at *6 (ED Mich 2022). [Ex. 16]. As explained *supra*, there has been no breach of contract, so her claim fails. Any expectation of a business relationship is belied by Plaintiff's one-year contract term. Plus, Plaintiff cannot assert a claim that HPS interfered with its contract or business relationship as a matter of law.  *Derderian,* 263 Mich App at 382.

## IX.    THERE IS NO IMPLIED CONTRACT

Plaintiff's application for employment certifies that unless she has a written contract specifically stating otherwise signed by the superintendent, her employment is at-will.  [Ex. 17].  This is unambiguous and must be enforced. Her claim of implied contract that conflicts with this written instrument fails.   *Kendzierski v. Macomb Cnty.,* 503 Mich. 296, 312, 931 (2019) (reciting Michigan's contract law).

## X.     PLAINTIFF'S PUBLIC POLICY CLAIM IS PREEMPTED

Plaintiff brings a claim for violation of public policy in which she raises the same allegations as her ELCRA retaliation and WPA claims. *See Ex. 1.* ¶78-88, 104-109; *cf Ex. 1, ¶128-133*. Plaintiff cannot do so as a matter of law. Her public policy claim is also fails for the same reasons that her ELCRA and WPA claims fail.  *See Sections I and III.*

---

[4] Count X only makes one passing reference to Defendant"s".

In *Dolan v Continental Airlines/Continental Express*, the Michigan Supreme Court held that the WPA is the exclusive remedy against discharge and retaliation for the conduct at issue, and a public policy claim based on the same facts is not viable. *See* 454 Mich 373, 382 (1997). The Michigan Supreme Court has also held that where ELCRA prohibits the complained of conduct, a plaintiff's exclusive remedy lies in an ELCRA claim and that a plaintiff cannot maintain a simultaneous public policy claim. *See McClements v Ford*, 473 Mich 373, 383 (2005); *Sulieman v St John Hosp & Med Ctr*, No. 2:07-cv-15426, 2009 WL 10680532, at *7 (ED Mich June 26, 2009). [Ex. 16].

## XI.   PLAINTIFF CANNOT ESTABLISH A VIOLATION OF RTKA.

Plaintiff's Complaint does not dispute that she received her personnel record. Plaintiff alleges that she was forced to file this lawsuit because Defendants only "partially complied" with the Bullard-Plawecki Employee Right To Know Act ("RTKA") because Defendants did not maintain its investigation report and Plaintiff's complaints within her produced personnel file.

Plaintiff was not entitled to the investigation alluded to, as it was privileged at the time requested. *See Edwards v Scripps Media, Inc*, No. 18-10735, 2019 WL 2448654, at *1 (ED Mich June 10, 2019) (sex harassment investigation conducted by in-house counsel and at issue in an ELCRA lawsuit was privileged) [Ex. 16]; *Hoffman v Bay City Sch Dist*, 137 Mich App 333, 338 (1984). [Ex. 18]. The investigation is also privileged under the deliberative process doctrine. *See, e.g., Ostoin v Waterford Twp*

22

*Police Dept,* 189 Mich App 334, 338 (1991) (qualified privilege protects from disclosure documents in investigation file reflecting a governmental agency's evaluative or deliberative processes).

Plaintiff's complaint is not properly part of her personnel file and her claim that her personnel file did not contain the documents that she wanted it to is not actionable. *See McCann v Midland Cnty Educ Servs Agency*, 2008 WL 2559281, at *14 (ED Mich June 23, 2008) (a violation of the RTKA stems from lack of access to the personnel file versus a good faith dispute of its contents). [Ex. 16].

## XII.   CONCLUSORY DISABILITY RETALIATION CLAIM FAILS

The elements of a retaliation claim under the Persons with Disabilities Civil Rights Act ("PWDCRA") are the same as ELCRA.  *DeFlaviis v. Lord & Taylor, Inc.,* 223 Mich.App. 432, 436 (1997).  Plaintiff only addresses disabled students in Count IX – not in the factual allegations.   This claim is presumed to be in error.

To the extent it is not, Plaintiff provides no detail whatsoever regarding her alleged protected activity. She does not plead who she made a complaint to, or when the complaint was made. The only detail she does provide is that she reported concerns that students with disabilities are being cheated out of a proper education.  [Ex. 1, ¶222, 224].  Generalized concerns are not actionable. *Barrett,* 245 Mich. App. at 319 (citing *McLemore v. Detroit Receiving Hosp. & Univ. Medical Center*, 196 Mich.App. 391, 396 (1992). (Employee's charge must clearly convey to an objective employer that the

employee is raising the specter of a claim of unlawful discrimination pursuant to the CRA). She then alleges she was terminated and slandered as a result or that she suffered harassment because of the "protected activity as outlined above."  [Ex. 1, ¶¶228-229]. Her conclusory allegations simply cannot support a claim of retaliation under the PWDCRA.   To the extent this court disagrees, Plaintiff cannot establish but-for causation where she alleges the retaliation occurred because of a falling out with Elhady and to upset her cousin, the Board President.

## XIII.  CONSTITUTIONAL CLAIMS ARE NOT PROPERLY PLEAD

Plaintiff makes no allegations to develop her freedom of religion claim. Plaintiff's U.S. Constitutional claims cannot exist without a §1983 claim, which Plaintiff omits.   Her claim fails for this reason alone. *See InterVarsity Christian Fellowship/USA v. Board of Governors of Wayne State University,* 534 F.Supp.3d 785 (2021) (Section 1983 explicitly allows private parties to sue officials for the deprivation of any rights, privileges, or immunities secured by the Constitution).

To make a First Amendment retaliation claim, Plaintiff must show: (1) she engaged in First Amendment protected activity; (2) HPS undertook "an adverse action" that would deter "a person of ordinary firmness from continuing to engage in that conduct"; and (3) that there is a "causal connection" between Plaintiff's protected activity and HPS' adverse action.  Plaintiff alleges she was terminated in retaliation for raising concerns that parents must be informed and participate in the selection of books

24

that she believed were pornographic.  [Ex. 1, ¶221, 223].  Her threadbare allegations cannot state a claim under Michigan or U.S. constitutional law.[5]  Plaintiff's claim fails to identify with any specificity the allegedly protected speech in question and concludes with no basis whatsoever that her non-renewal, which was premised on her improper actions towards the Title IX coordinator, was somehow caused by her speech. She does not allege her speech touched on a matter of public concern or that she was speaking as a private citizen, both of which are required to establish her claim.  Her claim fails. *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 877–78 (6th Cir. 2024) (What was Blick's "protected speech"? We have no idea.  [She did not identify] any past speech with specificity. And without protected speech, her retaliation claim fails.) (cleaned up).

Even if Plaintiff could allege a constitutional violation, which she cannot, she fails to allege that her retaliation arose from a Board policy or custom, as required for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, (1978).  She also does not allege that that anyone at HPS acted with deliberate indifference to a known constitutional right.  Therefore, Nagi, is entitled to qualified immunity and liability cannot attach to HPS.  *Id.; Blick, supra.*

/s/*Anne-Marie V. Welch* (P70035)

---

[5] Federal First Amendment authority may be used in construing Michigan's free speech guarantee. *Burns v. City of Detroit* (On Remand), 253 Mich. App. 608, 620–21 (2002), judgment modified, appeal denied in part sub nom. *Burns v. City of Detroit*, 468 Mich. 881 (2003)

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 24, 2024, a true and correct copy of the foregoing document was served via transmission of Notices of Electronic Filing generated by CM/ECF, and by electronic mail as follows:

ELDER BRINKMAN LAW, PLLC
AZZAM E. ELDER
Attorney for Plaintiff
1360 Porter Street, Suite 200
Dearborn, MI  48124
aelder@elderbrinkman.com

RJ LANDAU PARTNERS, PLLC
RICHARD J. LANDAU (P42223)
Attorney for Defendant Nabil Nagi
5340 Plymouth Road, Suite 200
Ann Arbor MI  48105
Rjlandau@rjlps.com

*/s/Jacki L. Barnes*

26